[993 NE2d 1257, 971 NYS2d 237]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEAN CANTAVE, Appellant.

Argued May 29, 2013; decided June 25, 2013

## POINTS OF COUNSEL

*Lynn W.L. Fahey, Appellate Advocates*, New York City (*De Nice Powell* of counsel), for appellant. I. The court violated appellant's Fifth Amendment privilege against self-incrimination and due process right to testify at his trial when it granted the People's request to cross-examine him about the underlying facts of a conviction that was then pending on direct appeal. (*People v Betts*, 70 NY2d 289; *Rock v Arkansas*, 483 US 44; *Spradling v Texas*, 455 US 971; *Chambers v Mississippi*, 410 US 284; *Brooks v Tennessee*, 406 US 605; *Jones v Barnes*, 463 US 745; *Culombe v Connecticut*, 367 US 568; *Lefkowitz v Turley*, 414 US 70; *Grunewald v United States*, 353 US 391; *Estelle v Smith*, 451 US 454.) II. The court erred when it refused to admit appellant's 911 call into evidence as an excited utterance or present sense impression when he made the call immediately after the complainant confronted and attacked him with a gun, while the complainant remained at the scene. (*People v Vasquez*, 88 NY2d 561; *People v Nieves*, 67 NY2d 125; *People v Johnson*, 1 NY3d 302; *People v Brown*, 70 NY2d 513; *People v Caviness*, 38 NY2d 227; *People v Marks*, 6 NY2d 67; *People v Cotto*, 92 NY2d 68; *People v Edwards*, 47 NY2d 493; *People v Brooks*, 71 NY2d 877; *People v Perez*, 221 AD2d 169.)

*Richard A. Brown, District Attorney*, Kew Gardens (*William H. Branigan, Robert J. Masters* and *John M. Castellano* of counsel), for respondent. I. Defendant failed to preserve his claim that the trial court's *Sandoval* ruling was improper. In any event, the trial court acted consistent with precedent from

this Court, the federal courts, and the majority of other jurisdictions in permitting questions about defendant's prior conviction that was pending appeal. (*People v Brady*, 97 NY2d 233; *People v Betts*, 70 NY2d 289; *Ottomano v United States*, 468 F2d 269; *People v Sandoval*, 34 NY2d 371; *People v Walker*, 83 NY2d 455; *People v Bonaparte*, 78 NY2d 26; *People v Whipple*, 97 NY2d 1; *People v Mackey*, 49 NY2d 274; *People v Shields*, 46 NY2d 764.) II. The court properly excluded the recording of defendant's call to 911. (*People v Melendez*, 296 AD2d 424; *People v Marks*, 6 NY2d 67; *People v Vasquez*, 88 NY2d 561; *People v Brown*, 70 NY2d 513; *People v Edwards*, 47 NY2d 493; *People v Cotto*, 92 NY2d 68; *People v Sostre*, 51 NY2d 958; *People v Johnson*, 1 NY3d 302; *People v Kello*, 96 NY2d 740; *People v Paige*, 283 AD2d 445.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

The primary issue presented by this appeal is whether the court violated defendant's Fifth Amendment privilege against self-incrimination when it granted the People's request to cross-examine him about the underlying facts of a rape conviction that was then on direct appeal. For the reasons discussed below, we hold that a defendant with a conviction pending appeal may not be cross-examined in another matter about the underlying facts of that conviction until direct appeal has been exhausted.

Defendant was charged with second-degree and third-degree assault as a result of a confrontation outside his place of business at which only defendant, complainant Andre Elbresius, and Elbresius's wife were present. Defendant and Elbresius were neighbors and acquaintances. A few hours before their altercation, Elbresius had given defendant a ride in his car, and they had argued about defendant's unauthorized use of Elbresius's spare license plate. The argument escalated to a confrontation at defendant's place of business. Elbresius claimed that defendant was the sole aggressor, pushing and biting Elbresius on his finger and ear, for which he required surgery. Defendant claimed that Elbresius was the initial aggressor and hit defendant in the face with a gun, which he reported to a 911 emergency operator.

At trial, the defense was justification and defendant planned to testify, but the People received permission, after a *Sandoval* hearing, to cross-examine him about his recent rape conviction, still pending on direct appeal, as well as the underlying facts,

and the sentence he received. After the defense rested, defense counsel asked the court to reconsider the *Sandoval* ruling, objecting that an appeal of the rape conviction was pending and, therefore, cross-examination about the conviction and its underlying facts would violate defendant's constitutional privilege against self-incrimination, but the court adhered to its ruling. Defendant did not testify and was convicted of third-degree assault. Subsequently, his conviction for rape was reversed for ineffective assistance of counsel, his prior attorney having failed to impeach the complainant with exculpatory hospital records (*People v Cantave*, 83 AD3d 857 [2d Dept 2011], *lv denied* 17 NY3d 857 [2011]). Defendant was retried and acquitted.

Defense counsel also sought to admit defendant's 911 call, which recorded defendant seeking police assistance and reporting an attack by a man with a gun who was still at the scene. Counsel argued that the call should be admitted under either the excited utterance or present sense impression exception to the hearsay rule. Although the court acknowledged that of the two theories of admission, present sense impression would be the hearsay exception that would allow the call to be admitted, the court excluded the call, finding that defendant "had sufficient time to think about what he was going to say to 911."

The Appellate Division affirmed (93 AD3d 677 [2d Dept 2012]), finding the *Sandoval* issue unpreserved, and in any event found that the admission of the underlying facts of defendant's rape conviction was not an abuse of discretion. The court also held the 911 call properly excluded, finding it neither an excited utterance nor a present sense impression. A Judge of this Court granted leave to appeal (19 NY3d 958 [2012]), and we now reverse.

## I.

As a threshold matter, we find the *Sandoval* issue preserved. To preserve an issue for review, counsel must register an objection and apprise the court of grounds upon which the objection is based "at the time" of the allegedly erroneous ruling "or at any subsequent time when the court had an opportunity of effectively changing the same" (CPL 470.05 [2]). After the defense rested but before either side presented closing remarks, defense counsel asked the court to reconsider its *Sandoval* ruling, specifically informing the court that the rape conviction was then "under appeal," and asserting that defendant's Fifth Amendment privilege against self-incrimination

should preclude cross-examination about it. This objection was lodged at a time when the court had the "opportunity of effectively changing" its ruling (CPL 470.05 [2]), since neither side had yet presented closing remarks and the jury had not yet commenced deliberations (*People v Olsen*, 34 NY2d 349, 353 [1974] [court has power to alter order of proof and, concomitantly, reopen the proof, at least until the jury commences deliberations]; CPL 260.30). Therefore, we may review the *Sandoval* issue on the merits.

## II.

The privilege against self-incrimination, which "must be accorded liberal construction in favor" of the protection it affords the accused (*Hoffman v United States*, 341 US 479, 486 [1951]), allows him to not answer "official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings" (*Lefkowitz v Turley*, 414 US 70, 77 [1973]). A defendant who elects to testify places his credibility at issue and may generally be cross-examined about past criminal or immoral acts that bear upon his credibility, veracity, or honesty (*People v Bennett*, 79 NY2d 464, 468 [1992]), but he does not automatically waive the constitutional protection against cross-examination regarding pending criminal charges (*People v Betts*, 70 NY2d 289, 292 [1987]).

In *Betts*, defense counsel objected to cross-examination about a pending, unrelated charge, asserting that, if questioned about it, Mr. Betts would invoke his Fifth Amendment privilege against self-incrimination. The trial court, however, allowed the cross-examination and ruled that Mr. Betts would not be permitted to assert his Fifth Amendment right (*Betts*, 70 NY2d at 291-292). We reversed the judgment and ordered a new trial and held that the prosecution may not cross-examine a defendant about a pending, unrelated criminal matter for the purpose of impeaching his credibility (*id.* at 295). We stated,

> "Allowing a defendant-witness' credibility to be assailed through the use of cross-examination concerning an unrelated pending criminal charge unduly compromises the defendant's right to testify with respect to the case on trial, while simultaneously jeopardizing the correspondingly important right not to incriminate oneself as to the pending matter." (*Id.*)

Defendant urges us to extend the *Betts* holding to apply not only to a pending criminal charge, but also to facts underlying a conviction pending appeal.[1] We are persuaded that the same concerns that animated *Betts* apply here. When tried in the instant case, defendant had been convicted of rape, but he was pursuing a direct appeal, as of right, of that conviction. Thus, he remained at risk of self-incrimination until he exhausted his right to appeal (*cf. Mitchell v United States*, 526 US 314, 326 [1999] ["If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared"]). If defendant testified in the instant case, any testimony elicited on cross-examination about the rape case could later be used against him at a new trial, which is "further incrimination to be feared" (*Mitchell*, 526 US at 326).[2]

Although the record is sparse on the issue, in ruling that the prosecution could cross-examine defendant about the underlying facts of his rape conviction, presumably the court was not implying that defendant could not assert his Fifth Amendment privilege in response to those questions. However, "taking the Fifth" is highly prejudicial as to both the instant case and the conviction pending appeal. To a jury, it appears as though defendant is admitting the truth of the leading questions posed by the prosecutor; "[i]t exerts an undeniable chilling effect upon a real 'choice' whether to testify in one's own behalf" (*Betts*, 70 NY2d at 292). More problematic, defendant must invoke the Fifth Amendment as to both exculpatory and inculpatory questions to protect himself; otherwise he might waive the privilege (*Brown v United States*, 356 US 148, 156 [1958]; *see also People v Bagby*, 65 NY2d 410, 414 [1985] ["(A) witness who foregoes

---

**1.** We have extended the *Betts* ruling before. In *People v Smith* (87 NY2d 715 [1996]), in the context of grand jury testimony, we emphasized that allowing questioning about an unrelated pending criminal matter has an impermissible "chilling effect" on the accused's "significant" and "valued" statutory right to testify, which must be "scrupulously protected." We held in *Smith* that when a defendant testifies before a grand jury, the prosecution may not cross-examine him about a pending, unrelated criminal matter in order to assail his credibility (87 NY2d at 720-721).

**2.** In that regard, this case is distinguishable from *People v Brady* (97 NY2d 233 [2002]), in which we upheld a *Sandoval* ruling permitting cross-examination of a defendant about a prior, unrelated crime to which he waived his Fifth Amendment right and pleaded guilty 18 months earlier. During the plea colloquy, Brady waived his right to appeal, and for the subsequent 18 months his plea was undisturbed and unchallenged (*id.* at 235-237). Thus, unlike this case, the defendant in *Brady* had no fear of exposure from the prosecution's use of his testimony.

the protection of the constitutional privilege against self-incrimination by giving testimony to his advantage . . . cannot in the same proceeding assert the privilege and refuse to answer questions that are to his disadvantage" (citing *People v Cassidy*, 213 NY 388, 394 [1915])]). The risk of this cross-examination would place defendant in a similar quandary to that faced by Mr. Betts. Being questioned about the facts underlying the previous conviction while it is pending appeal "unduly compromises the defendant's right to testify with respect to the case on trial, while simultaneously jeopardizing the correspondingly important right not to incriminate oneself as to the pending matter" (*Betts*, 70 NY2d at 295). The practical effect of the court's *Sandoval* ruling was to prevent defendant's testimony entirely.[3]

We hold that the prosecution may not cross-examine a defendant about the underlying facts of an unrelated criminal conviction on appeal, for the purpose of impeaching his credibility. The trial court's ruling violated the defendant's privilege against self-incrimination with respect to the admission of the underlying facts of the rape conviction.

## III.

■■ The trial court did not abuse its discretion by excluding the 911 call, because neither the tenor nor timing of the call served to qualify it as an excited utterance or a present sense impression. Defendant, as the proponent of admission, had, but did not satisfy, the burden of proving that the call fell under the excited utterance exception (*People v Brensic*, 70 NY2d 9, 14 [1987], citing *People v Nieves*, 67 NY2d 125, 131 [1986]). Excited utterances are exceptions to the hearsay rule because the declarant is exposed to a startling or upsetting event that is "sufficiently powerful to render [his] normal reflective processes inoperative" (*People v Vasquez*, 88 NY2d 561, 574 [1996]). "The essential element" of this hearsay exception "is that the declarant spoke while under the stress or influence of the excitement caused by the event, so that his reflective capacity was stilled" (*Nieves*, 67 NY2d at 135). The spontaneity of the declaration guarantees its trustworthiness and reliability (*see People v Johnson*, 1 NY3d 302 [2003]).

---

**3.** Whether the court properly balanced the *Sandoval* factors—the prejudicial nature of the evidence, and its relative probative value—is not a question before us. We are only concerned with defendant's rights with respect to the Fifth Amendment privilege against self-incrimination.

While somewhat agitated on the call, defendant's voice did not evidence an inability to reflect upon the events, which would have supported an excited utterance exception to hearsay. It is somewhat suspect that defendant failed to report the names of Mr. and Mrs. Elbresius to the 911 operator, since he knew them well, and instead seemed to refer to them as unknown assailants. Additionally, despite claiming to have been assaulted, defendant did not complain of an injury or request an ambulance until questioned specifically about an injury, pain and the need for emergency services by the 911 operator. Defendant's statements on the recording could reflect an evolving fabrication prompted by the operator's questioning (*see People v Edwards*, 47 NY2d 493, 499 [1979] [whether a statement is prompted by inquiry is one factor to consider in determining whether statement was spontaneous]). Most notably, defendant omitted entirely that he had bit off a part of the victim's ear and injured his finger. Such an omission is evidence that defendant had the opportunity, and likely the intent, to distort the facts. Additionally, defendant's medical records refute any claim that defendant was injured in a way that would detract from his ability to reflect upon events, because they contain no evidence of an injury to defendant's face (*see Johnson*, 1 NY3d at 307 [citing to medical records and officer's testimony to determine that victim's statement was not excited]). In deciding to exclude the call, the court acted within its discretion, which is apparent from its careful review of the details of the 911 call, and applicable case law (*see e.g. People v Melendez*, 296 AD2d 424, 425-426 [2d Dept 2002] [declarant's statement that she stabbed a man who pursued her with a gun was admissible]).

It was also not error to preclude the 911 call based on defendant's alternative theory of admission. To qualify as a present sense impression, the out-of-court statement must be (1) made by a person perceiving the event as it is unfolding or immediately afterward (*Vasquez*, 88 NY2d at 574-575; *People v Brown*, 80 NY2d 729, 732-734 [1993]), and (2) corroborated by independent evidence establishing the reliability of the contents of the statement (*id.*). There was no evidence to show that defendant's statements were made spontaneously and contemporaneously with the events described, nor was defendant's description of what happened corroborated by other evidence (*Brown*, 80 NY2d at 734-735).

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Judges GRAFFEO, READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order reversed and a new trial ordered.