The PEOPLE of the State of Colorado, Plaintiff–Appellant and Cross–Appellee,

v.

Stephen Mark SKUFCA, Defendant–Appellee and Cross–Appellant.

No. 02CA2233.

Colorado Court of Appeals, Div. I.

Dec. 1, 2005.

Rehearing Denied April 27, 2006.*

Certiorari Granted Aug. 28, 2006.**

* Casebolt, J., would GRANT.

** Justice EID does not participate.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado; Paul R. McLimans, District Attorney, David M. Waite, Deputy District Attorney, Craig, Colorado, for Plaintiff–Appellant and Cross–Appellee.

David S. Kaplan, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

ROY, J.

Defendant, Stephen Mark Skufca, appeals from the judgment of conviction entered on jury verdicts finding him guilty of possession of a schedule II controlled substance (methamphetamine), possession of marijuana, possession of drug paraphernalia, and introduction of contraband in the first degree. The prosecution appeals the sentence imposed. We reverse and remand for a new trial.

On September 21, 2000, deputies with the Moffat County Sheriff's Department obtained a warrant for defendant's arrest in connection with a traffic offense. The deputies located defendant's car in a parking lot, initiated surveillance of the car, and, upon defendant's return to the car, arrested him. Incident to the arrest, the deputies conducted a routine pat-down search and discovered a black knife and three $100 bills.

Defendant's car was also searched, and the deputies found one small bag containing 2.86 grams of methamphetamine and two other plastic bags containing collectively 33.35 grams of marijuana. The search also revealed a scale and a shortened pen tube that appeared to have drug residue on it.

At the jail, defendant was again searched. The deputies found a folded paper bindle containing a small amount of methamphetamine in defendant's sock upon which two telephone numbers had been written.

Earlier on the day of his arrest, defendant had assisted an undercover Drug Enforce-

ment Administration (DEA) agent in purchasing 9.6 grams of methamphetamine from an unnamed source and one pound of marijuana from another unnamed source. Defendant was permitted to keep a small amount of each purchase. The undercover agent's phone numbers were written on the bindle of methamphetamine found in defendant's sock, the drugs found in defendant's possession were the type of drugs involved in the transactions, and the cash in defendant's possession was traced to the undercover agent. Separate federal charges were filed as to these morning drug transactions which remained pending at the time of defendant's trial here.

In this case, defendant was charged with one count each of possession of a schedule II controlled substance (methamphetamine) with intent to distribute, a class three felony, § 18–18–405(1)(a), (2)(a)(I)(A), C.R.S.2005; possession of marijuana with intent to distribute, a class four felony, § 18–18–406(8)(b)(I), (III)(A), C.R.S.2005; introducing contraband in the first degree, a class four felony, § 18–8–203(1)–(2), C.R.S.2005; and possession of drug paraphernalia, a class two petty offense, § 18–18–428(1)–(2), C.R.S. 2005.

The first trial ended in a mistrial. Following the second trial, defendant was convicted of the lesser included offense of possession of methamphetamine, § 18–18–405(1), (2)(a)(I)(A), C.R.S.2005; the lesser included offense of possession of more than one but less than eight ounces of marijuana, § 18–18–406(4)(a)(I), C.R.S.2005; and the remaining offenses, introducing contraband in the first degree and possession of drug paraphernalia, as charged.

After the verdict, and over defense objections, the court held a habitual offender hearing; defendant was convicted of three counts of being a habitual offender, § 18–1.3–801, C.R.S.2005. The trial court then held a combined sentencing hearing and abbreviated proportionality review and concluded that the imposition of the prescribed twenty-four-year term in the Department of Corrections would be grossly disproportionate to defendant's offenses. The court then sentenced defendant to concurrent terms of twelve years each on the possession of methamphetamine

and introduction of contraband counts, and six months on the possession of marijuana.

The prosecution's appeal of the sentence and defendant's cross-appeal of his conviction followed.

## I.

■ Defendant's primary contention on cross-appeal is that the trial court impermissibly burdened his constitutional right to testify in his own defense by admitting the evidence of the morning drug transactions as res gestae evidence and refused to limit the prosecution's cross-examination of him with respect to those transactions had he decided to testify. We agree.

In a pretrial hearing, defendant objected to the admission of the evidence of the morning drug transactions as res gestae evidence and argued that if it was admissible at all it would be under CRE 404(b). The trial court disagreed and allowed the evidence as res gestae evidence.

During the trial and prior to the introduction of the morning drug transactions evidence, defendant requested that the trial court reconsider its ruling on the res gestae evidence on the ground that it chilled his right to testify in this case. In addition, defense counsel, while recognizing that defendant would be prohibited from testifying about the res gestae evidence, and that he would have to appropriately limit direct examination of defendant to avoid "opening the door," requested that the trial court prohibit any cross-examination of defendant as to the res gestae evidence. The trial court denied both requests.

Then, after the prosecution presented the evidence in its case-in-chief, the court advised defendant of his right to testify on his own behalf pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984). Defendant stated he could not testify because the federal charges were currently pending regarding the res gestae evidence, and the trial court's refusal to limit his cross-examination had placed him in the untenable position of choosing either to testify on his own behalf in this case or exercise his right not to incriminate himself

in the federal criminal matter. Defendant now raises these same arguments on appeal.

■ Under both the Fourteenth Amendment to the United States Constitution and article II, section 25 of the Colorado Constitution, an accused in a criminal case has a due process right to testify in his or her own defense. *Apodaca v. People,* 712 P.2d 467 (Colo.1985). This right is fundamental, and the opportunity to decide to exercise it freely and without coercive influence is critical to the trial itself. *Apodaca v. People, supra; see also People v. Curtis, supra.*

■ A constitutional right may be impermissibly chilled when there is some penalty imposed for exercising it. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Apodaca v. People, supra.* However, not all burdens placed on a defendant's choice of whether to testify constitute impermissible impediments to the exercise of the constitutional right to testify. A defendant's right to testify has generally been found to be impermissibly burdened only when there is an issue involving the constitutional admissibility of evidence or when the defendant is forced to choose between the right to testify and some other constitutional right. *People v. Anderson,* 954 P.2d 627 (Colo.App.1997).

In support of his claim, defendant has directed our attention to several Colorado cases in which the courts concluded that the defendant's right to testify or right against self-incrimination had been impermissibly burdened. *See Bales v. People,* 713 P.2d 1280 (Colo.1986)(trial court impermissibly burdened the defendant's right to testify when it refused to hold an evidentiary hearing to determine the constitutional admissibility of a prior conviction); *Apodaca v. People, supra* (trial court impermissibly burdened the defendant's right to testify by refusing to make a timely ruling on defendant's motion to suppress a prior conviction); *People v. Chavez,* 621 P.2d 1362 (Colo.1981)(trial court impermissibly burdened the defendant's right to testify by erroneously ruling that evidence of defendant's prior convictions elicited during trial of substantive charges would be admissible for substantive purposes at habitual criminal offender proceeding); *People v. Rosenthal,* 617 P.2d 551 (Colo.1980)(trial court impermissibly burdened the defendant's right against self-incrimination by allowing prosecution to present, at the trial on the merits, statements defendant had made to privately retained psychiatrist while preparing for sanity trial); *People v. Kreiter,* 782 P.2d 803 (Colo.App.1988)(trial court impermissibly burdened the defendant's right to testify and present a defense when it based its ruling on the admissibility of similar act evidence on an incorrect burden of proof). While these cases are instructive, they do not directly address the circumstances presented by these facts.

Defendant contends that his situation is unique, that is, this case involves the tension between exercising his Sixth Amendment right to testify in this case and his Fifth Amendment right not to incriminate himself with respect to the other pending charges. Our research has disclosed that only two jurisdictions have addressed this precise issue in published cases, and both support defendant's contention.

The leading case is *People v. Betts,* 70 N.Y.2d 289, 520 N.Y.S.2d 370, 514 N.E.2d 865 (1987). In that case, the defendant was on trial for rape, with an unrelated burglary charge pending in another court. As pertinent here, the defendant, in a pretrial motion, requested that the prosecution be prohibited from cross-examining him concerning the burglary because, among other reasons, he would be forced to assert his Fifth Amendment right against self-incrimination. The request was denied. The sole issue on appeal was the use of the pending charge by the prosecution during cross-examination. After tracing its previous authority, the court stated, in pertinent part:

> [T]he correct evidentiary rule for this case, which is in harmony with the common-law maturation of our precedents, is that a defendant-witness does not generally and automatically waive the privilege against self-incrimination as to pending collateral criminal charges. Allowing a defendant-witness' credibility to be assailed through the use of cross-examination concerning an unrelated pending criminal charge unduly compromises the defendant's right to testi-

fy with respect to the case on trial, while simultaneously jeopardizing the correspondingly important right not to incriminate oneself as to the pending matter.

. . . .

The policy of protecting the defendant's opportunity to testify, while allowing the prosecution a balanced evidentiary response, is well served by the rule that the defendant's choice to testify in the case on trial does not, by itself, effect a waiver of the privilege against self-incrimination as to pending unrelated charges. This rule will not, on the other hand, preclude prosecutors from inquiry into pending criminal charges if a defendant, in taking the stand, makes assertions that open the door and render those charges relevant for contradiction and response.

*People v. Betts, supra,* 70 N.Y.2d at 294–95, 520 N.Y.S.2d 370, 514 N.E.2d at 867–68 (citations omitted).

■ Like New York, Colorado's scope of cross-examination of a defendant is broad. When a defendant testifies in his own defense, his credibility may be impeached and his or her testimony assailed like that of any other witness, and the breadth of his waiver of Fifth Amendment rights is determined by the scope of relevant cross-examination. *People v. Moran,* 983 P.2d 143 (Colo.App. 1999).

In *State v. Tuell,* 112 Ariz. 340, 541 P.2d 1142 (1975), the defendant was charged with two drug offenses which were severed for trial, and the count covering the earlier conduct went to trial first. The issue arose in the context of the admission of the second offense as identity evidence for the first, which the trial court permitted after denying the defendant's motion in limine requesting its exclusion. After concluding that the admission was not permissible, the supreme court addressed the prosecution's assertion that the issue was moot because the evidence was never offered at trial. The court disagreed, stating:

In criminal prosecutions, the accused has a right to testify in his own behalf. The admission of the evidence of subsequent acts or crimes in Count II would have been so prejudicial as to completely destroy any possible probative value. The ruling of the trial court effectively precluded appellant

from exercising his constitutional right to testify in his own behalf as to Count I for the reason he would be forced to exercise his right against self-incrimination as to Count II. We hold that the trial court erred in denying appellant's motion in limine and the fact that subsequent acts were never offered in evidence does not render the question moot on appeal.

*State v. Tuell, supra,* 112 Ariz. at 345, 541 P.2d at 1147 (citations omitted).

We are persuaded by the rationales of *Betts* and *Tuell.* We conclude that the trial court erred in admitting the drug transaction evidence and that error was aggravated by the trial court's refusal to limit the prosecution's cross-examination of defendant with respect thereto.

Therefore, the conviction must be reversed and the matter remanded for a new trial.

Because of our resolution of this issue and because they are not likely to arise on retrial, we need not address defendant's contentions concerning jury selection and the use of a county judge to accept the verdict, and the prosecution's appeal of the abbreviated proportionality review conducted by the trial court in conjunction with defendant's habitual criminal sentence.

## II.

■ Because it may arise on retrial, and assuming that the federal charges will then have been resolved, we address defendant's parallel contention that the trial court erred in admitting, as res gestae evidence, the testimony concerning the morning drug transactions. Defendant asserts that the evidence was not res gestae evidence. We disagree.

■ Evidence of a defendant's prior criminal or bad acts is inadmissible to prove that a defendant committed the crime charged. *People v. Lucas,* 992 P.2d 619 (Colo.App.1999); *see* CRE 404(b). However, evidence of other offenses or bad acts that is not extrinsic to the offense charged, but is instead part of the criminal episode or transaction with which the defendant is charged, is admissible to provide the fact finder with a full and complete understanding of the events surrounding the crime and the context

in which the charged crime occurred. This res gestae evidence is not subject to the general rule that excludes evidence of prior criminality. *People v. Quintana*, 882 P.2d 1366 (Colo.1994); *People v. Valdez*, 56 P.3d 1148 (Colo.App.2002).

"Res gestae evidence is 'matter incidental' to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood." ' *People v. Bernabei*, 979 P.2d 26, 29 (Colo.App.1998)(quoting *Woertman v. People*, 804 P.2d 188, 190 n. 3 (Colo.1991)). It includes criminal conduct that is part and parcel of the crime charged or provides a background for the offense. *People v. Agado*, 964 P.2d 565 (Colo.App. 1998). It also encompasses the circumstances, facts, and declarations that arise from the main event and serve to illustrate its character, as well as evidence that is closely related in both time and nature to the charged offense. *People v. Quintana, supra.*

To be admissible as res gestae, the evidence must be relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice. *People v. Rollins*, 892 P.2d 866 (Colo.1995); *see* CRE 403. The trial court has substantial discretion in determining the admissibility of evidence, and absent an abuse of discretion, the trial court's evidentiary rulings will be affirmed. *People v. Eppens*, 979 P.2d 14 (Colo.1999); *People v. Valdez, supra.*

Initially, we note that Colorado courts have upheld the admission of evidence of other transactions occurring weeks in advance of the events giving rise to the charged offense. *See People v. Czemerynski*, 786 P.2d 1100 (Colo.1990)(allowing evidence of hundreds of phone calls allegedly made by the defendant before and after charged offense); *People v. Bernabei, supra* (allowing evidence of two prior drug transactions occurring the day of and two weeks prior to events giving rise to the charged offense); *People v. Allen*, 944 P.2d 541 (Colo.App.1996)(admitting evidence of events leading to issuance of a restraining order in case with a history of continual domestic abuse). Here, defendant's transactions with the DEA agent occurred within a matter of hours prior to his arrest.

Evidence presented at trial showed that defendant retained portions of the drugs that were sold to the agent, and similar drugs were ultimately found on his person and in his car later that day. In addition, defendant's earlier transactions with the agent and his later charged offenses were linked by: (1) the agent's two phone numbers that were scrawled on the bindle containing the methamphetamine found in defendant's sock; (2) the three $100 dollar bills that were found on defendant's person and were later identified by the agent as bills the agent had given to defendant for the purchase of drugs; and (3) the drugs found in defendant's car, which were the same types of drugs involved in the morning transactions.

Given these circumstances, we conclude that defendant's drug transactions with the DEA agent could properly be considered "part and parcel of the criminal episode" that later became the basis for his state prosecution. *See People v. Lucas, supra*, 992 P.2d at 624. Clearly, the evidence could be helpful to the jury in determining whether the drugs found in his car were his, how they came to be in his car, and where he obtained the bindle found in his sock after his arrest. The evidence was also relevant to the issue of defendant's intent to distribute controlled substances, an offense with which he was charged but acquitted. Thus, the evidence of the prior transactions was closely interwoven with the facts of defendant's arrest and served to provide a context in which the jury could both understand the circumstances of defendant's arrest and assess the validity of the charges against him.

Nor, in our view, absent the chilling effect of the evidence on defendant's right to testify, did the prejudice outweigh the probative value of the evidence. We note that because possession of the methamphetamine and marijuana is illegal, defendant could not have legally acquired them. Therefore, evidence that defendant came into possession of the illegal drugs illegally was not overly prejudicial.

Finally, we note that the trial court can, as it did here, minimize any possible prejudice

that defendant might suffer by issuing a limiting instruction immediately prior to the DEA agent's direct testimony. *See People v. O'Neal*, 32 P.3d 533 (Colo.App.2000); *People v. Valdez, supra.*

Accordingly, we conclude that the trial court did not abuse its discretion in admitting the evidence of the morning drug transactions as res gestae, absent the chilling effect on defendant's right to testify.

## III.

■■■ Defendant contends that the trial court erred in using, for habitual criminal purposes, his conviction for distributing marijuana based upon his guilty plea on April 8, 1983, because the plea was entered without a knowing, intelligent, and voluntary waiver of counsel. The matter may arise on retrial in the event defendant is again convicted. Because, however, the claim is time barred, we will not address it on the merits.

Defendant's contention is a collateral attack on the previous conviction which is cognizable under Crim. P. 35(c). Section 16–5–402, C.R.S.2005, limits the time within which such motions must be brought.

As to the conviction at issue here, from which no direct appeal was taken, the statute requires that the motion be brought within three years of the date of conviction. Section 16–5–402(1).

For convictions occurring before July 1, 1984, motions for post-conviction relief must be brought within five years of that date, or July 1, 1989, absent a showing of excusable neglect or justifiable excuse. *People v. Wiedemer*, 852 P.2d 424 (Colo.1993); *People v. Fagerholm*, 768 P.2d 689 (Colo.1989); *People v. Penrod*, 892 P.2d 383 (Colo.App.1994).

Section 16–5–402(1.5), permits the appellate court to deny relief on the basis that the request is time barred regardless of whether the issue of timeliness was raised in the trial court. *See People v. Kilgore*, 992 P.2d 661 (Colo.App.1999). Defendant did not assert excusable neglect or justifiable excuse in the trial court as the time bar was not raised in the trial court. Nor was it raised on appeal. We address it sua sponte.

Here, the conviction was entered April 8, 1983, and was not challenged until the habitual criminal phase of these proceedings on June 24, 2002. Therefore, defendant's challenge to this conviction is time barred.

## IV.

Also, because they may arise on retrial, we address defendant's other contentions of error relating to the habitual criminal phase of the proceedings. The prosecution proceeded on three prior felony convictions arising from three cases: (1) a conviction of distribution of marijuana based on a plea entered April 8, 1983, a class four felony, judgment and sentence deferred and subsequently revoked on March 29, 1985 (count V); (2) possession of a class II scheduled controlled substance, a class three felony, and driving after judgment prohibited, a class five felony, based on pleas entered February 25, 1992 (count VI); and (3) unlawful possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2005), a felony under the laws of this state, § 18–12–108, C.R.S.2005, based on a plea entered March 19, 1992, in the United States District Court for the District of Colorado (count VII).

### A.

■■■ Defendant first argues that the prosecution failed to present sufficient evidence establishing that he was the person convicted in counts V and VI.

■■■ A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988); *People v. Carrasco*, 85 P.3d 580 (Colo.App.2003).

■■■ In habitual criminal proceedings, the prosecution bears the burden of proving beyond a reasonable doubt that the accused is the person who was charged in the prior proceedings giving rise to the convictions. *People v. Bernabei, supra.* Although evi-

dence of fingerprint cards and expert testimony linking those prints to the defendant is a frequently used and valid method for proving the identity element, it is not the only acceptable method. Section 18–1.3–802, C.R.S.2005; *People v. Carrasco, supra.*

Here, the prosecution called the office manager of the district attorney's office as a witness. The office manager was so employed at the time counts V and VI were adjudicated, was personally acquainted with defendant, and identified certified copies of the judgments of conviction from the two cases that were offered into evidence by the prosecution.

In addition, the office manager testified that defendant was the same individual identified in a booking photo from a federal corrections facility as defendant when incarcerated on a federal weapons charge in 1997. The prosecution also presented testimony from a former probation officer, who identified defendant as the individual she supervised in connection with the federal conviction of unlawful possession of a firearm by a felon predicated on the two cases as issue here.

Based on this evidence, we conclude that the prosecution sufficiently established that defendant was the person convicted in the two felony cases.

### B.

■ Defendant also argues that the prosecution failed to prove his conviction of count V for selling or dispensing marijuana because the date of conviction alleged in the habitual criminal information was different from the date of conviction actually proved by the evidence. We disagree.

As previously indicated, defendant entered a guilty plea on April 8, 1983, and was granted a deferred judgment and sentence. On March 11, 1985, the court found defendant guilty of violating the terms of his deferred judgment, and the matter was continued to March 29, 1985, for sentencing. On March 29, 1985, the trial court entered judgment and sentenced defendant. Defendant asserts that he was convicted on the date of his guilty plea, April 8, 1983, and not on the date of his sentencing, March 29, 1985, as alleged in the criminal information.

Under *People v. Jacquez,* 196 Colo. 569, 588 P.2d 871 (1979), the date of a defendant's conviction for purposes of the habitual criminal statute, is the date the judgment of conviction is entered by the trial court. *See also People v. Harris,* 914 P.2d 434 (Colo.App. 1995). Here, because the judgment and sentence initially were deferred, the judgment of conviction was not entered until defendant was sentenced on March 29, 1985, after revocation of the deferred judgment.

### C.

■ Defendant also contends that the trial court erred in not making sufficient findings in support of its conclusions that he was previously convicted of three felony offenses.

■ Defendant has not referred us to any authority establishing the requisites for sufficient findings in habitual criminal matters. C.R.C.P. 52 requires a trial court sitting without a jury to "find the facts specially and state separately its conclusions of law." Under that rule the oral findings are considered sufficient if they are sufficiently explicit as to the grounds the trial court used to reach its conclusion so as to permit review by the appellate court. *Hipps v. Hennig,* 167 Colo. 358, 447 P.2d 700 (1968); *Esecson v. Bushnell,* 663 P.2d 258 (Colo.App.1983). This standard is equally applicable to oral findings in criminal proceedings.

While the trial court's findings and conclusions are not phrased in terms of the habitual criminal statute and are relatively informal, it concluded, with support in the record, in pertinent part, as follows:

I don't think there is any real dispute here. [Defendant] . . . in 1983 . . . entered a plea of guilty on charges pending there, apparently, to two counts. Count 1, which was to be deferred, and Count II . . . [a] Class 1 Misdemeanor [count V]. The deferred count then was revoked at a later time and that's when the judgment was entered in conjunction with a revocation, apparently, that occurred on or about March 11 of 1985. And then he was sentenced . . . on March 29.

. . . .

The defendant then also subsequently ... in 1984 ... and that is [count VI]. And that was Driving After Judgment ... Prohibited. The particular judgment of conviction refers to the charge under § 42–2–206(1) as Driving After Judgment Revoked ... a Class 5 Felony.

And again, the Court would note that there is no dispute ... that this is the same defendant as was the defendant in [count V], and as is the defendant in this case

. . . .

. . . .

The final case [count VII] the People rely upon is a case of the Federal District Court, Case No. 92CR70.... And again, the Court would find there is no reasonable dispute about the identity.... And the Court finds then the People have made proof beyond a reasonable doubt as to all three prior felonies.

We conclude that these findings, particularly when taken in conjunction with the undisputed exhibits, are sufficient for appellate review and to sustain habitual criminal sentencing.

### D.

 Finally, defendant's claim that his Sixth Amendment right to a jury trial has been violated because his habitual offender status was determined by a judge and not a jury has no merit. Divisions of this court have already rejected such claims in *People v. Carrasco, supra,* and *People v. Johnson,* 74 P.3d 349 (Colo.App.2002), and we will not depart from those holdings.

Accordingly, the judgment is reversed, and the case is remanded for a new trial and other proceedings in accordance with the views expressed in this opinion should the matters arise on remand.

MARQUEZ and CASEBOLT, JJ., concur.